IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA L. RUBIN | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AMERIHEALTH ADMINSTRATORS, | : | |
| INC. d/b/a AMERIHEALTH | : | |
| ADMINSTRATORS | : | |
| and | : | |
| CROZER-CHESTER MEDICAL CENTER, | : | |
| Defendants. | : | NO. 12-3719-RK |

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S RESPONSE IN OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS, AMERIHEALTH ADMINISTRATORS, INC.
AND CROZER-CHESTER MEDICAL CENTER

I.    SUMMARY OF THE CLAIM

This is an action commenced by the plaintiff, Debra L. Rubin, seeking medical benefits

pursuant to a self-insured health plan provided by the defendant, Crozer-Keystone Health

System.  Crozer-Keystone Health System has retained the assistance of AmeriHealth

Administrators, a wholly owned subsidiary of Independence Blue Cross to act as its claims

administrator.  Plaintiff initiated her claim under the Employee Retirement Income Security Act,

29 U.S.C. § 1001, *et seq.* ("ERISA").

Plaintiff has sought direct relief under the ERISA statute, as well as requesting

declaratory judgment in her favor due to the treatment of her claim by the defendants.

Plaintiff sustained injuries on June 17, 2011, as the result of a slip and fall incident which

occurred in the parking lot of the Springfield Mall.  She immediately began suffering from

swelling-type symptoms to her lower extremities, and this pain began spreading in excruciating fashion up her leg, spreading to other parts of her body. (See Chronology of Plaintiff, Exhibit 1 and Rubin Letter 4-12-12, Exhibit 2.) She sought the treatment of Roderick Spears, a neurologist associated with Crozer Hospital. Dr. Spears confirmed that the plaintiff was suffering from Chronic Regional Pain Syndrome ("CRPS") and agreed that a course of inpatient hospitalization for intravenous Ketamine would be appropriate to treat the plaintiff's CRPS medical condition. (See Spears Report, Exhibit 3.)

Plaintiff sought the referred treatment from Dr. Robert Schwartzman, of Drexel Neurology. Dr. Schwartzman is a Board-certified neurologist, and a specialist in chronic pain management, who established the first CRPS clinic in the United States, and has done much research and work both nationally and internationally on treatment of this malady. (See Plaintiff's Deposition, attached hereto as Exhibit 4, pp. 31-40.)

Ketamine is a well-known and widely used anesthetic-type drug which has been used for the treatment of extreme burn patients, and in other medical applications for a number of years.

The use, which the plaintiff sought, of intravenous Ketamine is the subject of dispute within the medical community.

The plaintiff, acting without counsel, as many ERISA-type plaintiffs originally do, submitted her request for such treatment to AmeriHealth. AmeriHealth advised her that such treatments were considered experimental and investigational, and that she would not be permitted to receive such benefits, quoting the terms of the policy. (See AmeriHealth letter 3-28-12, Exhibit 5.)

The plaintiff pursued her remedies within the policy itself, and provided a great number of documents, studies, and specific outcomes of requests for Ketamine treatment throughout the

appeals process.  (See Exhibit 2.)  The nature of this documentation, which forms an important basis of plaintiff's complaint will be outlined further in this answer.

After having outside evaluators National Medical Reviews, and MCMC review certain documentation provided by the plaintiff, they concluded that the treatment was in fact investigational or experimental, and that no such treatment would be permitted, leaving plaintiff with the remedy of proceeding under ERISA.

II.      SUMMARY JUDGMENT UNDER RULE 56

Summary judgment is merited if the pleadings, the discovery, disclosure materials on file, and any affidavit show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  F.R.C.P. 56(c).  As to materiality, the substance of law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986).  Summary judgment is precluded when there is a dispute over facts which might affect the outcome of the suit under the governing law.  Id.  The non-moving party must make a showing sufficient to establish the existence of elements essential to their case based on affidavits or by the depositions or admissions on file.  United Steel Workers of America AFL-CIO/CLC and Lewis Griffin, George Hemmert, George Keddie, and Janice Scott v. Rohm and Haas Company and Rohm and Haas Company Health and Welfare Plan, 683 F.Supp.2d 355 (E.D. Pa. 2010).

In this matter, the focus of the motion for the summary judgment is whether the defendants, and its reviewing entities, inappropriately considered the claim of the plaintiff in issuing their ultimate denial.

III.    ERISA Standard of Review

Fundamental to any ERISA claim is a standard of review to be applied.  In this matter, Crozer-Keystone retained the services of AmeriHealth Administrators, Inc. to review claims, consider all information associated such claims, and make decisions on behalf of the insurer. (See Defendant's Exhibit 3, Summary Plan Description at pages 74-75.)  Under this ostensible independent arrangement, courts have held that the decisions of administrators be given deference, and not be disturbed unless such decisions are arbitrary and capricious.  Metropolitan Life Insurance Company v. Glenn, 544 U.S. 105, 128 S.Ct. 2343 (2008).  Interestingly, the directives of the Supreme Court had been that such ERISA cases be viewed in accordance with principles of trust law, with the insurance company, or plan administrator, acting in the role as fiduciary.

However, the inquiry as to the appropriate standard does not end with this status-oriented evaluation.  The court must further consider the terms of the plan and its application to determine if there are structural or procedural conflicts on the part of the administrator in the evaluation of information and evidence provided in each specific case.  Vierra v. Life Insurance Company of North America, 642 F.3rd 407 (3rd Cir. 2011).

If it is determined that the plan administrator or fiduciary who was operating under a conflict of interest, then the conflict should be weighed as a factor in determining whether there is an abuse of discretion.  Glenn, supra.  Any such conflicts will be scrutinized, and, if present, will decrease the level of deference given in proportion to the seriousness of the conflict.  Id.  It is suggested in this matter that procedural irregularities in the providing of information to reviewers, and the nature of the policy itself provide inherent conflicts which should result in the rejection of the claims decision rendered in this matter.  United Steel Workers of America v.

Rohm and Haas, Id., and Lamanna v. Special Agents Mutual Benefits Association, 546 F.Supp.2d 261 (W.D. Pa. 2008).

IV.    PROCEDURAL IRREGULARITIES AND INHERENT CONFLICT OF INTEREST SHOULD RESULT IN THE GRANTING OF PLAINTIFF'S CLAIM

Following the request from Dr. Schwartzman to permit the IV Ketamine treatment, AmeriHealth issued its first denial to the plaintiff on March 28, 2012, using as its rationale that the use of intravenous Ketamine is considered experimental/investigational and therefore not covered for the treatment of CRPS.  (See Exhibit 5.)  That initial rejection permitted the plaintiff to appeal in writing within 180 days, and the plaintiff, in fact, pursued that appeal.

The plaintiff, in fact, authored a letter to Dr. Gideon Hill that outlined her disagreement with the decision, and providing information relevant to her claim, including reference to the acceptance of a CRPS patient for intravenous Ketamine through an external utilization review appeal.  (Exhibit 2.)  All of the communication associated with this matter by the plaintiff was with Dr. Hill, who, at the time of this appeal process, was Vice President of Managed Care Services and Regional Medical Director for AmeriHealth, which fundamentally made decisions on claims such as those of Ms. Rubin.  (See Hill Dep., Exhibit 6, p. 8.)

Dr. Hill held this role from 2005 to the present.  Between 1996 and 2005, he acted as the Senior Medical Director for Independence Blue Cross, performing a similar function for that entity.  (Hill Dep., p. 8.)

The last time Dr. Hill actively practiced was in 1996, in his Board-certified area of family practice, where he indicated that he saw patients of all ages, pediatrics, women's health, and adult medicine.  (Hill Dep., p. 8, and CV, Exhibit 7.)  At no time did Dr. Hill profess to have credentials that would have permitted him to make decisions on the use of intravenous Ketamine,

but rather deferred these decisions to outside specialists in that field.  Dr. Hill was, in fact, the signator of decisions associated with the plaintiff's appeals.  (See Hill Dep., p, 11.)

In making the initial rejection of the claim, Dr. Hill confirmed that the Medical Policy Bulletin of Independence Blue Cross was utilized throughout the appeal process as justification for the fact that intravenous Ketamine therapy was experimental or investigational, and, accordingly, not covered by AmeriHealth, who relied on the aforesaid Medical Policy Bulletin. (Hill Dep., p. 26, Exhibit 1-11.)

In accordance with its appeal process, AmeriHealth forwarded the claim of Ms. Rubin to National Medical Reviews, Inc. for consideration to Dr. John Glass, a neurologist.  In upholding the decision to reject Ketamine, Dr. Glass utilized the IBC medical policy for CRPS, an article by Sigterman's from 2009, and an article from Dr. Schwartzman from 2009 with the additional designation of 147:107-115.  (See Exhibit 8.)  This decision was communicated via letter from Dr. Hill dated April 30, 2012, who repeated the conclusion that there was no evidence in peer-reviewed medical literature that Ketamine is superior to other forms of treatment for CRPS.  (See Exhibit 9.)

The plaintiff requested a final level review of her case.  This review was to be completed by MCMC, as required by AmeriHealth.  In conjunction with that appeal, the plaintiff submitted additional information as part of this so-called IRO appeal process.  (See Exhibit 10.)  On May 30, MCMC notified AmeriHealth that the member had, in fact, submitted additional information for them to consider, specifically a new professional 2011 journal specifically directed towards the use of Ketamine in Complex Regional Pain Syndrome cases.  (Hill Dep., Exhibit 1, p. 18, Exhibit 11.)  In response to that request, Dr. Hill indicated that he had reviewed the additional information submitted, and determined that the information was not of a nature

that would allow AmeriHealth to overturn the appeal. (Hill Dep., Exhibit 1-18).) Dr. Hill confirmed the fact that he alone determined that this new information should not be reviewed by MCMC. (Hill Dep., pp. 42-45.) Accordingly, Dr. Hill exercised his own independent judgment in not permitting MCMC to review this information prior to rendering their decision. When asked why he did this, he answered, "And if - if there had been something that was compelling there, I would have overturned it and approved it right then and we could have, you know proceeded. As you see my documentation, I reviewed the information submitted, information that is not of the nature that will allow us to overturn the appeal. And I said please continue, send the appeal for external review." (Hill Dep., p. 43.)

Shortly thereafter, MCMC provided their decision that the intravenous Ketamine treatment was inappropriate. (See Exhibit 12.) That report reflected that medical literature did not support the use of intravenous Ketamine to treat CRPS. That report made reference to specific studies, including the Schwartzman article of 2009, 147-107-115, and the Sigterman's article of 2009, 145:204-311. What that report did not indicate was a review of the updated 2011 study from Schwartzman, for which directions had been given to not consider it by representatives of AmeriHealth. Accordingly, it is submitted that the MCMC report was completed in a vacuum, with representatives of the defendant directing that such new information not be considered. Dr. Hill confirmed, based upon his review of thousands of appeals such as this, that the MCMC report would list the studies in reaching the conclusions set forth in the May 30th denial letter. (Hill Dep., p. 49.) Most tellingly, the updated 2011 Schwartzman study is not included.

That most recent study of 2011 revisited the issue of the use of intravenous Ketamine. While it is outside the complete understanding of the plaintiff, and her counsel, the article, at

page 725, specifically considered analyzed, double-blind, randomized controlled trials in the treatment of CRPS.  This would seem to address the concerns of the final level review by MCMC, regarding the appropriate use of studies.  The article determined that the use of intravenous Ketamine was, in fact, appropriate.

As reflected in the Medical Policy Bulletin upon which the defendants rely, the defendants recognize that, "This Medical Policy Bulletin document describes the status of medical technology at the time the document was developed.  Since that time, new technology may have emerged or new medical literature may have been published."  (See Defendants' Motion for Summary Judgment Exhibit 6.)  Emerging data with regard to this particular issue was of critical importance to evaluate in plaintiff's claim.

In addition to the submitted updated IV Ketamine article, the plaintiff likewise supplied case-specific information, in which a determination was made by an independent medical reviewer that the studies suggested that Ketamine was neither experimental nor investigational.  (Rubin Dep., Exhibit 11, pp. 62-63, Exhibit 12 of Plaintiff's Deposition, attached hereto and marked as Exhibit 13.) [1]

If the defendants had chosen to pursue the very specific information plaintiff supplied, they would have found the nearly identical case, in which the use of intravenous Ketamine was evaluated by an independent medical reviewer, with the specific charge of finding whether it was experimental and investigational, and, further, that the reviewer found two publications and studies in the peer-reviewed medical literature that in his view supported the use of anesthetic IV Ketamine in approving plaintiff's claim.

---

[1] The plaintiff obtained this documentation through a Ketamine support group.  The specific name of the patient has been redacted for purposes of privacy.

V.   APPLICATION OF STANDARD OF REVIEW TO INSTANT CASE

As originally set forth in this memorandum, the facts of each specific case will result in the application of the appropriate level of judicial scrutiny.  In Lamanna v. Special Agents Mutual Benefits Association, *supra*, in considering a rejected health claim of a plaintiff, the court focused on the fact that record reviews by independent examiners were based on incomplete information not supplied by the administrator.  Id. at 290.  That fact led the court to determine that the plan administrator acted arbitrarily and capriciously.  As set forth in Lamanna, the administrator's self-serving selectivity in the use of evidence is an important factor in determining structural conflicts within the administration of a policy.  Lamanna, Id. at 287, citing Russell v. Paul Revere Life Insurance Company, 148 F.Supp.2d 392 (D. Del. 2001).  Unfairness in the review was the touchstone of the court's decision, and it is suggested the unfairness in not considering specific information supplied by the plaintiff, including the 2011 study, should result in the finding of arbitrary and capricious application to her claim.  In United Steel Workers v. Rohm and Haas, Id., our own District Court similarly considered the failure to consider subsequent records supplied by a plaintiff.  In the Rohm decision, the failure to submit additional evidence of a disability to a reviewer was found to be violative of the plaintiff's rights, and ultimately resulted in the granting of their motion for summary judgment.  United Steel Workers, Id. at 367.

VI.   CONCLUSION

The medical issue of intravenous use of Ketamine treatment for CRPS is in the forefront of medical consideration, and in a state of continuing change.  The administrator's exercise of his own judgment in discounting new information associated with such a claim, and the reviewer's non-consideration of such information, should be deemed an arbitrary and capricious action.

Accordingly, it is respectfully submitted that the defendants' claim for summary judgment should

be denied, and plaintiff's claim for the requested treatment be permitted.

Respectfully submitted,

BARNARD, MEZZANOTTE, PINNIE
 AND SEELAUS, LLP


By:    /s/ Mark S. Pinnie
        Mark S. Pinnie, Esquire
        Attorney I.D. No. 34769
        218 West Front Street
        Media, PA  19063
        Tel:  610-565-4055
        Fax:  610-565-3309
        Email:  mpinnie@bmplaw.net

        Attorneys for Plaintiff,
        DEBRA L. RUBIN