# PLAINTIFF'S EXHIBIT 11


## pennsylvania
### DEPARTMENT OF HEALTH

(717) 787-5193
(888) 466-2787

March 2, 2011

Ms. ▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Quakertown, Pennsylvania 18951

Re:    CRE Assignment Notice to Enrollee Representative
▓▓▓▓▓▓▓; DOH #2011-▓▓-▓▓▓▓

Dear Ms. ▓▓▓▓

The Pennsylvania Department of Health, Bureau of Managed Care (DOH; Department) received a request to assign an external review for ▓▓▓▓▓▓▓ on March 2, 2011, from ▓▓▓▓▓▓▓▓▓ (the Plan).   The external review is concerning the Plan's denial regarding coverage for an inpatient admission for ketamine infusion.  You initiated this external review with the written consent of ▓▓▓▓▓▓▓.

The Department assigns external reviews on a rotational basis to an independent and external review organization called a Certified Review Entity (CRE).  The Department certifies CREs to review external reviews.  Your external review has been assigned to Permedion, 350 Worthington Road, Suite H, Westerville, Ohio 43082; contact Sue Butterfield, toll-free (800) 473-0802.  Use the specific DOH tracking number, 2011-▓▓-▓▓▓▓, whenever forwarding information or making inquiries.

We have enclosed more information about the external review process, i.e., what to expect and how to send additional information you wish the CRE to consider.  If you have any questions or require additional assistance, please call me at (717) 787-5193 or toll-free at (888) 466-2787.

Sincerely,

Crystal Miller, R.N.
Division of Quality Review

Enclosure
Cc without enclosure:    ▓▓▓▓▓▓▓
Fax:                     ▓▓▓▓▓▓▓▓▓▓
                         Permedion



**pennsylvania**
INSURANCE DEPARTMENT

*(handwritten: Medical [illegible] family Practice / Neurologist Pain [illegible] / April by the 29th)*

March 17, 2011

Ms. ▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇
Quakertown, PA. 18951

Department File Number –11-▇▇-▇▇▇▇

Dear Ms. ▇▇▇▇:

*(handwritten: Health America)*

Thank you for contacting our Department to share the difficulties you are experiencing with claim payment from ~~Independence Blue Cross~~.  I also appreciate your patience while I reviewed the matter. My review of your complaint revealed that your complaint is presently being handled by the Pennsylvania Department of Health.   The Pennsylvania Department of Health can be reached at the following address:

Pennsylvania Department of Health
Bureau of Managed Care
Health and Welfare Building
Room 912, 9th floor
Harrisburg, PA  17108
Phone #: (717) 787-5193

Under the Affordable Care Act all individuals having difficulties with their insurance carriers have the right to an external review of their situation.  At present the Pennsylvania Department of Health is assigning these complaints to a Certified Review Entity (CRE); once your review is completed by the CRE, they will advise you of the outcome and any further rights you have.

Please understand that once a determination is made by the CRE, our Department would be unable to overturn any adverse determination made by that CRE. If you have any questions about the status of the review, please contact the agency listed above.

Sincerely yours,

*(signature)*

Ronald M. Laird
Consumer Services Investigator
Harrisburg Regional Office

*The Insurance Department's Bureau of Consumers Services reviews consumer complaints that may relate to the insurance laws of the Commonwealth. This letter is intended solely to provide you with the results of our efforts responding to your recent inquiry. It does not affect any other legal rights or remedies you may have, including any ability you may have to seek relief in court or some other forum. Further, be advised that this communication does not constitute an adjudication under the Administrative Agency Law.*

*(handwritten: RSDA  RSDA  RSDA  RSDA)*



HEALTHAMERICA *Original*
A Coventry Health Core Plan

*Received on
April 21, 2011*

April 18, 2011

▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Quakertown, PA 18951

RE: External Review for ▓▓▓▓▓▓

Dear Ms. ▓▓▓▓

This letter is in regards to your request for an external utilization review appeal for ▓▓▓▓ ▓▓▓▓ with a certified utilization review entity through the Pennsylvania Department of Health.

The reviewing physician has determined that an inpatient admission for ketamine infusions for ▓▓▓▓▓▓▓ should be covered and has overturned the plan's original decision. The authorization has been updated to show that the inpatient admission for ketamine infusions has been approved.

If you have any additional questions, please contact me directly at 1-717-526-2753.

Sincerely,

Robert Golden
Appeals Team Leader

Cc: ▓▓▓▓▓▓

3721 TeePort Drive, PO Box 67103, Harrisburg, PA 17106-7103
800-788-6445 • 717-540-4260 • www.healthamerica.cvty.com

FA 680011

  

an HMS company

HealthAssurance
DOH Case #: 2011-⬛⬛
Page 1 of 7


Quakertown, PA 18951

## Demographic Information:

| | |
|---|---|
| Member: | ⬛ Stacy Myers ⬛ |
| Patient: | ⬛ Stacy Myer ⬛ |
| PA Reference Number: | 2011⬛-⬛ |
| Insurer: | HealthAssurance |
| Inquiry#: | ⬛ |
| Date Request was Filed (Notification): | 03-⬛-2011 |
| Date Case File Received: | 03-⬛-2011 |
| Date of Decision: | 04-⬛-2011 |

Ms. ⬛

Permedion is certified by the Commonwealth of Pennsylvania and the Department of Health's managed care regulations as a Certified Review Entity. Permedion was assigned your appeal for external review regarding denial for the inpatient admission for Ketamine infusion. The health plan has denied coverage on the basis that the services were considered not medically necessary for the treatment of the enrollee's condition.

A qualified member of Permedion's reviewer panel was assigned to review your case. This reviewer has no conflict of interest regarding this case. The reviewer is a certified by the American Board of Psychiatry and Neurology; member of American Board of Psychiatry and Neurology (Diplomate), American Academy of Neurology, American Society of Clinical Oncology, American Association for Cancer Research, Society for Neuro-Oncology, and the Central Society of Neurologic Research; is extensively published in the peer reviewed literature; and is in active practice. The physician is licensed in the state Ohio.

## Brief History and Description of Case:

In summary, this case entails a thirty five (35) year-old Caucasian female with an insignificant past medical history who was well until September of 2009. At that time she was an active wife and mother of two children, who did not have any clinical symptoms or concerns. On September 13, 2009 she

350 Worthington Road, Suite H · Westerville, OH 43082
614/895-9900 · fax; 614/895-6784 · www.permedion.com



suffered an accidental injury when the kitchen table was dropped on her left foot. Although the work-up did not disclose a fracture, the foot was placed into a soft cast or brace for a number of weeks. After removal of the cast/brace, the foot had already begun to have permanent discoloration, with a darker, bluish hue. Within approximately four (4) weeks, the foot was in constant pain, described as a burning, crushing, or "cold aching" sensation that she rated as an 8 to 10 out of 10. Over the next few months, the pain spread from the left foot to the lower left leg, and then crossed over to involve the right foot and lower leg. Soon after, she was relegated to using a wheelchair, because use of both lower extremities (especially on the left side) during ambulation was too painful.

In December of 2009 she was referred to a physician specializing in anesthesia and pain management. He diagnosed her with Complex Regional Pain Syndrome (CRPS; also known as Reflex Sympathetic Dystrophy, RSD). Over the next year, the physician tried numerous combinations of narcotic analgesics, antidepressants, and neuropathic pain medications, including cupana, Xanax, Zoloft, Neurontin, Elavil, nortriptyline, Cymbalta, Pristiq, MS Contin, and morphine immediate release. None of these oral medications, in various doses and combinations, gave her any significant relief from the neuropathic pain. Also in December of 2009, he gave her a radiofrequency sympathetic denervation at L-4, which did not have any effect on the painful symptoms. That same month she also underwent a series of chemical sympathetic blocks (December 2nd, December 7th, December 9th, December 14th), which were also unable to provide any significant or durable relief from the pain.

Early on, she also went through courses of physical therapy and occupational therapy. In early 2010, she went through a series of lumbosacral anesthetic injections (February 17th, February 22nd, March 3rd), which did reduce the pain for a few days, but were unable to provide sustained relief. She was then referred to Dr. Schwartz for consideration of placement of a temporary spinal cord stimulator, which was implanted on April 7, 2010, and did help reduce the intensity of the pain to some degree. Based on that response, she was implanted with a permanent spinal cord stimulator on May 10, 2010, with an initial sustained mild improvement in pain symptoms. Unfortunately, the pain returned back to pre-implantation levels after a number of weeks. She was then referred to a neurologist for evaluation for further treatment for refractory CRPS, and saw him in his office on August 11, 2010. He diagnosed her with Generalized CRPS, and recommended treatment with inpatient intravenous (IV) Ketamine, according to his protocol, which involved receiving the drug by continuous IV infusion (10-40 mg/hour) over a five (5) day span, followed by further outpatient treatments with Ketamine. In January of 2011, the enrollee and her physician requested authorization from the health plan to proceed with the planned five (5) day course of IV Ketamine. The request was denied by the health plan indicating the treatment was not medically necessary and also to be experimental/investigational.

## Reviewer's Decision and Principle Reason(s) for Decision:

It is the determination of this reviewer that the inpatient admission for Ketamine infusion was considered medically necessary for the treatment of the enrollee's condition.

CRPS (RSD) is a neuropathic pain syndrome in which a typically minor inciting event (e.g., ankle fracture, minor trauma, surgical procedure) leads to a progressively worse neuropathic pain syndrome, in which the intensity of pain is dramatically out of proportion to the severity of the initial event. **(1, 2)** It is more common than initially thought, with an incidence in Europe of 26.3 per one hundred thousand (100,000) patient years, and an estimated prevalence in the USA of between one hundred fifty thousand (150,000) and two hundred fifty thousand (250,000) patients. The exact pathophysiology of CRPS is incompletely understood, but involves peripheral and central sensitization, inflammation, altered sympathetic and catecholaminergic function, altered somatosensory representation in the brain, possible genetic factors, and psychophysiologic interactions. **(1)** The Standard of Care (SOC) treatment of CRPS typically requires a multifaceted approach, with a combination of low risk, medium risk, and high risk treatment modalities. Low risk treatment options include restorative therapies such as physical therapy (PT), occupational therapy (OT), recreation therapy, and massage therapy. In addition, they include medications such as topical DSMO, amitriptyline, nortriptyline, baclofen, diazepam, clonazepam, and calcium channel blockers, along with Transcutaneous Electrical Nerve Stimulation (TENS) therapy. Medium risk treatment options include nerve blockade, sympathetic blockade, opiates and opioids, GABA antagonists, carbamazepine, corticosteroids, and sub-anesthetic doses of ketamine. **(3-5)** High risk treatment options include sympathectomy, spinal cord stimulation, spinal cord ablation, immunomodulation, and anesthetic dose IV ketamine. **(4,6-8)**

The enrollee has been through all of the other treatment options available without significant relief of her painful symptoms. This includes all of the restorative options (e.g., PT, OT), and the available oral medication options in the Low Risk and Medium Risk categories (including opiates and opioids), as well as most of the other invasive options in the Medium Risk and High Risk categories (including nerve blocks, sympathetic blocks, sympathectomy, and spinal cord stimulation). For example, she failed permanent spinal cord stimulation, even though the literature supports a fifty percent (50%) to seventy percent (70%) success rate in chronic back pain and CRPS cases. **(8)** The only other invasive option she has not tried is spinal cord ablation, which has more potential for adverse neurological sequelae than IV Ketamine, and is not backed up by any Level I data in the CRPS patient population.

As outlined above, it is Standard of Care (SOC) for a patient with CRPS to start with a combination of Low Risk and Medium Risk options, and then slowly add in new options if needed, to control the pain. In cases of severe and refractory CRPS, the more aggressive and potentially invasive options in the Medium Risk and High Risk categories should be attempted when the milder forms of treatment have failed, including nerve blocks, sympathetic blocks, and spinal cord stimulation. When even these modalities have been attempted and failed, then the final options should be considered, such as anesthetic dose IV Ketamine and spinal cord ablation.

The enrollee has worked very closely with her pain management team and gone through the entire SOC treatment plan for CRPS, including several aggressive and invasive procedures (e.g., nerve

blocks, sympathetic blocks, spinal cord stimulation), which have unfortunately not been successful in alleviating her pain for any sustained period of time. She is still having severe pain in both legs, and remains wheelchair bound. The only reasonable option left for her to try at this point in time is IV Ketamine.

There is nothing in the language of the health plan's definition of Medical Necessity that would prevent the enrollee from continuing to look for further treatment options for refractory CRPS. IV Ketamine treatment is medically appropriate for the enrollee's condition; given to improve physiological function; consistent with the current medical literature; consistent with the diagnosis of the condition; is *not* given for convenience; and not considered experimental for this enrollee per the current standards of care in the medical community.

In regard to the Ketamine infusion, the health plan considered it to be in the Experimental or Investigational realm of treatment options for refractory CRPS. However, the literature cited in the health plan policy for IV Ketamine was out of date and did not include all of the literature cited below. (4,6,7) Based on the discussion below, and the fact that anesthetic dose IV Ketamine is now supported by LEVEL I data in the literature, the reviewer feels that the enrollee does meet the criteria to receive this form of treatment.

The health plan deemed the use of IV Ketamine to be not Medically Necessary, but also stated that it was against the health plan's policy because it was considered Experimental or Investigational. This is not an accurate statement and goes against the available medical literature. There are now two publications in the peer-reviewed literature that have LEVEL I data, derived from Phase III randomized, placebo-controlled clinical trials, supporting the use of anesthetic level IV Ketamine in patients with refractory CRPS Type 1. (6,7) In the study by Sigtermans et al, they studied sixty (60) patients and noted a statistically significant improvement in pain control ($p < 0.001$) in the group of patients receiving IV Ketamine in comparison to the group that received the placebo infusion. The study by Schwartzman et al was designed very similarly and also noted a statistically significant improvement in pain control ($p < 0.05$) in the group receiving IV Ketamine. In addition, a reviewer for the health plan cited a paper by Dr. ME Goldberg to validate his reasoning and support the position that IV Ketamine was experimental/investigational. (9) However, Dr. Goldberg's position is further clarified in a more recent publication. (10) In this paper, he does not state that IV Ketamine is not efficacious or appropriate for patients with severe or refractory CRPS, nor does he state that it should be considered only an experimental or investigational treatment modality. What he does say is that there is selectivity in the responsiveness of various patients with CRPS to IV Ketamine, and that this aspect of its use is still unclear and will require further study. Therefore, inpatient admission for the administration of IV Ketamine is considered the standard of care in this enrollee's case.

HealthAssurance
DOH Case #: 2011-
Page 5 of 7

## Recommendation:

It is the recommendation of this reviewer that the denial of coverage issued by HealthAssurance for the inpatient admission for Ketamine infusion be overturned.

You, your representative, or your health care provider has 60 days from the receipt of the decision to appeal to a court of competent jurisdiction.

## References:

1. Bruehl S. An update on the pathophysiology of complex regional pain syndrome. Anesthesiol 2010;113:713-725.

2. Albazaz R, Wong YT, Homer-Vanniasinkam S. Complex regional pain syndrome: a review. Ann Vasc Surg 2008;22:297-306.

3. Rowbotham MC. Pharmacologic management of complex regional pain syndrome. Clin J Pain 2006;22:425-429.

4. Ben-Ari A, Lewis MC, Davidson E. Chronic administration of ketamine for analgesia. J Pain Palliat Care Pharmacother 2007;21:7-14.

5. Correll GE, Maleki J, Gracely EJ, et al. Subanesthetic ketamine infusion therapy: a retrospective analysis of a novel therapeutic approach to CRPS. Pain Med 2004;5:263-275.

6. Sigtermans MJ, van Hilten JJ, Bauer MC, et al. Ketamine produces effective and long-term pain relief in patients with complex regional pain syndrome type 1. Pain 2009;145:304-311.

7. Schwartzman RJ, Alexander GM, Grothusen JR, et al. Outpatient intravenous ketamine for the treatment of complex regional pain syndrome: a double-blind placebo controlled study. Pain 2009;147:107-115.

8. Jeon Y, Huh BK. Spinal cord stimulation for chronic pain. Ann Acad Med Singapore 2009;38:998-1003.

9. Goldberg ME, Schwartzman RJ, Torjman MC, et al. Ketamine infusion successful in some patients. Pain Physician 2010;13:E371-372.

HealthAssurance
DOH Case #: 2011-█████
Page 6 of 7

10. Sabia M, Hirsh RA, Torjman MC, et al.  Advances in translational neuropathic research: Example of enantioselective pharmacokinetic-pharmacodynamic modeling of ketamine-induced pain relief in complex regional pain syndrome.  Curr Pain Headache Rep 2011;Mar[Epub ahead of print].

## Documents provided for the review included:

- 3-2-11, letter to Barbara Fluck (Authorized Representative [AR]) from Pennsylvania Department of Health (PA DOH), 1 page
- 3-11-11, letter to Permedion from Health America, 2 pages
- 3-3-11, letter to AR from Health America, 1 page
- 3-1-11, letter to AR from Health America, 2 pages
- 3-1-11, letter to AR from Health America, 1 page
- 2-10-11, letter to Health America from the Congress of the United States House of Representatives, 1 page
- 2-3-11, letter to Health America from the Congress of the United States House of Representatives, 1 page
- 2-2-11, letter to unknown from Drexel University College of Medicine, 2 pages
- Document entitled: Privacy Act Form, 1 page
- Document entitled: Authorization to Use or Disclose, 4 pages
- 1-19-11, letter to enrollee from Health America, 2 pages
- 2-8-11, letter to AR from Health America, 2 pages
- Document entitled: Member Authorized Representative Form, 1 page
- Print out entitled: Issue Detail, 6 pages
- Document entitled: Case Report for Coventry Health Care, Inc., 3 pages
- Print out entitled: Referral Form- Coventry Health Care 1st Level, 4 pages
- Medical records: Drexel University College of Medicine, 6 pages
- Medical records: Clinical Pain Management Associates, 52 pages
- Medical records: Reading Ambulatory Surgery Center, L.P., 19 pages
- Document entitled: Exhibit 7 Contract Language, 5 pages
- Document entitled: Ketamine Infusion Therapy for Complex Regional Pain Syndrome (CRPS), 4 pages
- Document entitled: Exhibit 6 Coventry Health Care Medical Necessity Policy, 3 pages
- Document entitled: Exhibit 5 Coventry Health Care Experimental Policy, 3 pages
- Document entitled: Overview of Ketamine Infusion Therapy from the Reflect Sympathetic Dystrophy Syndrome Association (RSDSA), 3 pages
- Document entitled: The Neurocognitive Effects of 5 Day Anesthetic Ketamine for the Treatment of Refractory Complex Regional Pain Syndrome, 11 pages

*[handwritten: These are all items I got together for __ case]*

- Document entitled: Successful Treatment of a Nine-Year Case of Complex Regional Pain Syndrome Type-1 (Reflex Sympathetic Dystrophy) With Intravenous Ketamine-Infusion Therapy In a Warfarin-Anticoagulated Adult Female Patient, 9 pages
- Document entitled: Advocacy, 4 pages
- Document entitled: The General Assembly of Pennsylvania House Bill, 3 pages
- Document entitled: A Pilot Open-Label Study for the Efficacy of Subanesthetic Isomeric S(t)-Ketamine in Refractory CRPS Patients, 11 pages
- Document entitled: Subanesthetic Ketamine Infusion Therapy: A Retrospective Analysis of a Novel Therapeutic Approach to Complex Regional Pain Syndrome, 12 pages

**I have reviewed and agree with this decision:**

David J. Sand, MD, MBA, FACS, CHCQM
Chief Medical Officer
Permedion, Inc., an HMS Company

cc:     Debra Hawkes, PA Department of Health, Bureau of Managed Care
        Robert Golden, HealthAssurance
        ███████████ Enrollee